UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NETTIE RICHARDSON,

                              Plaintiff,

                                                            DECISION AND ORDER

                                                            03-CV-6382L

              v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                              Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Nettie E. Richardson ("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to Disability Insurance Benefits. The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and seeks an affirmance of her final decision. (Dkt. # 7).

For the reasons discussed below, the Commissioner's motion is denied, and the case is remanded for further administrative proceedings consistent with this Decision and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

Plaintiff was born on January 30, 1943, and she has a seventh grade education. (T. 41, 67).[1] Her work history includes positions as a day care provider, a home care provider, a security monitor, and a nursing aide. (T. 100).

_____

[1] "T.__" refers to the page of the administrative transcript filed by the Commissioner.

Plaintiff injured her back on March 4, 1996 while working as a home care provider. (T. 92). She received Worker's Compensation payments for a total disability from March 5, 1996 to April 1, 1996, and also from October 9, 1996 through June 12, 1997. (T. 278). She received Worker's Compensation payments for a partial disability from April 1, 1996 to October 9, 1996. (T. 278). Plaintiff applied for Social Security benefits under Title II and Part A of Title XVIII of the Act on June 18, 1996, alleging disability due to back pain. (T. 80). Her application was denied both initially and upon reconsideration. (T. 67, 68). Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ Bruce R. Mazzarella on September 26, 1997. (T. 25-56). Plaintiff appeared at the hearing with her attorney, Mark J. Palmiere. In a decision dated November 17, 1997, the ALJ found that plaintiff was not disabled within the meaning of the Act. (T. 546-554). The ALJ's decision became the first final decision of the Commissioner when, on January 14, 1999, the Appeals Council denied plaintiff's request for review. (T. 5-6).

The first action seeking reversal of the Commissioner's decision was filed in the United States District Court for the Western District of New York on March 16, 1999. *Richardson v. Apfel*, No. 99-CV-6117CJS (W.D.N.Y. Aug. 17, 1999). On August 17, 1999, by stipulation of the parties, United States District Court Judge Charles A. Siragusa ordered that the case be remanded to the Commissioner for further administrative proceedings pursuant to sentence four of 42 U.S.C. 405(g). (T. 559-562).

In a remand notice dated October 5, 1999, the Appeals Council ordered the ALJ to seek clarification and further support for the opinion of plaintiff's treating physician. (T. 566). A second hearing was held before ALJ Mazzarella on October 4, 2000, and Mr. Palmiere represented plaintiff once again. (T. 312-342). On December 7, 2000, the ALJ found that plaintiff was not disabled within the meaning of the Act during any period through the date of the decision. (T. 302-309). On December 29, 2000, plaintiff hired attorney Christopher M. Mesh of Segar & Sciortino as her new representative. (T. 298-299). On January 10, 2001, Mr. Mesh wrote to the Appeals Council

requesting a reversal of the ALJ's decision. (T. 293-296). The ALJ's second decision became the final decision of the Commissioner on June 11, 2003, when the Appeals Council declined to assume jurisdiction over plaintiff's exceptions to the decision.[2] (T. 285-286).

This action was filed on August 8, 2003. On April 5, 2004, the Commissioner filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Despite more than one attempt by this Court to solicit a response from plaintiff's counsel, no opposition to the Commissioner's motion was filed.

## DISCUSSION

### I. Standards for Determining Disability

A person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

---

[2] When a case is remanded by a federal court for further consideration, the decision of the ALJ becomes the final decision of the Commissioner after remand unless the Appeals Council assumes jurisdiction of the case. In contrast to the initial 60-day window available for the request of an Appeals Council review under 20 C.F.R. § 404.968, written exceptions must generally be filed within 30 days. If written exceptions to the decision of the ALJ are timely filed, the Appeals Council will consider those exceptions and all other issues presented by the case. If, as here, the Appeals Council declines to assume jurisdiction after considering the case, it will issue a notice explaining why no change in the decision of the ALJ is warranted. 20 C.F.R. § 404.984.

To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation.[3] *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986) (citations omitted); *Tejada*, 167 F.3d at 774. Once a claimant has proven steps one through four, the burden then shifts to the Commissioner to show that the person "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy.'" *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).

## II. Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court carefully considers the whole record, examining evidence from both sides "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (citing

---

[3] The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).

*Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997) (quoting *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988)). Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773. This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." (quoting *Johnson*, 817 F.2d at 986)).

Here, the Commissioner argues that substantial evidence in the record exists to support the ALJ's decision that plaintiff is able to perform her past relevant, light work as a security guard or assembly line worker, and is thus not disabled. Plaintiff's complaint asserts that the ALJ's decision is not supported by substantial evidence and is based upon error of law. I agree with plaintiff.

### III. The ALJ's Decision

Applying the five-step disability evaluation, ALJ Mazzarella first found that plaintiff had not engaged in substantial activity since her alleged onset date, March 4, 1996. (T. 308). At step two,

the ALJ found that plaintiff's impairments were severe within the meaning of the regulations. (T. 307). Specifically, he found that plaintiff had "chronic back pain secondary to lumbosacral strain, asymptomatic Crohn's disease, and a history of depression." (T. 308). At step three, the ALJ concluded that plaintiff's impairments did not meet or equal any of the listed impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 308). At step four, the ALJ determined that plaintiff retained the residual functional capacity to perform a full range of light work, including her past relevant work as a security guard and assembly line worker. (T. 307,309). The sequential evaluation process ended at step four, and the ALJ concluded that plaintiff was not under a disability as defined in the Act at any time through the date of his decision. (T. 309).

### IV. The ALJ's Decision is Based on Legal Error

The Commissioner's decision that plaintiff is not disabled must be reversed because the ALJ failed to apply the proper legal standards at the fourth step of his analysis. In this case, the ALJ failed to properly apply the treating physician rule, and he did not explain the weight he gave to the opinions of the other examining physicians.

### A. Treating Physician Rule

It has long been recognized that the opinion of a treating physician is given controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003); *Rosa*, 168 F.3d at 78; *see also* 20 C.F.R. § 404.1527(d)(2). Under the Commissioner's regulations, the ALJ must consider the following factors when assigning weight to the opinion of a treating source: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the treating physician presents relevant evidence to support an opinion, particularly medical signs and laboratory findings; (4) whether the treating physician's opinion is consistent with the record as a whole; (5) whether the treating physician is a specialist in the area relating to her opinion; and (6) other factors which tend to support or contradict the opinion. *Shaw*

*v. Chater*, 221 F.3d 126, 134 (2d Cir.2000); 20 C.F.R. § 404.1527(d)(2)-(6). When controlling weight is not given to a treating physician's medical opinion, the ALJ must explain his reasons for the weight he does assign to that opinion. *Shaw*, 221 F.3d at 134.[4] Furthermore, the Commissioner's regulations require that the ALJ "always give good reasons" in his decision for the weight he assigns to the opinions of treating physicians. 20 C.F.R. § 404.1527(d)(2).

In his December 2000, decision, ALJ Mazzarella did "not assign even significant weight" to the opinion of Margaret A. Donahue, M.D., the physician who treated plaintiff six to eight times per year between 1987 and January 2000. (T. 178, 307, 596). The ALJ gave Dr. Donahue's opinion little weight because "she has failed on two occasions to clarify her assessment of the claimant's functional capabilities or support it with any objective medical evidence." (T. 307). The ALJ also found that Dr. Donahue's statements regarding plaintiff's level of disability were inconsistent both internally and with the record as a whole. (T. 305). In fact, the ALJ thought so little of Dr. Donahue's opinion that he assigned it less weight than the testimony of the plaintiff, whom he found not credible. (T. 308).

I find that the ALJ erred in his analysis. His decision did not address the length of the treatment relationship between Dr. Donahue and plaintiff, nor did it address the frequency of examinations, nor the nature or the extent of the treatment relationship. Furthermore, reasons the ALJ did give for denying Dr. Donahue's opinion controlling weight are not supported by substantial evidence when considered in light of the record as a whole. Dr. Donahue's assessments of the plaintiff were, in fact, both internally consistent and consistent with the record as a whole. Similarly, the ALJ's assertion that Dr. Donahue failed to clarify her assessments is not supported by substantial evidence. The ALJ's failures are grounds for remand. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d

---

[4] Moreover, more weight generally should be given to the opinions of physicians who examine plaintiff than to the opinions of non-examining State Agency review physicians, who review written medical records, but do not conduct physical examinations themselves. *See* 20 C.F.R. § 404.1527(d)(1).

Cir.1999) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." (quoting 20 C.F.R. § 404.1527(d)(2)).

### 1. Dr. Donahue's assessments were internally consistent

According to ALJ Mazzarella, Dr. Donahue's assessments of plaintiff's disability are internally inconsistent because on May 14, 1996, the doctor wrote a letter stating plaintiff was capable of sedentary work, whereas on September 25, 1997, she prepared a hand-written note stating that plaintiff was totally disabled. The ALJ's assertion that these two letters, written 16 months apart, constitute inconsistency on the part of Dr. Donohue fails to consider the record as a whole. In particular, it fails to consider the medical evidence that Dr. Donahue received during the 16-month span between the two letters. It also fails to consider the other evidence of record.

On May 14, 1996, two months after plaintiff injured her back, Dr. Donahue wrote a letter to the State of New York Worker's Compensation Board.[5] (T. 148). In that letter, she wrote that plaintiff's severe low back pain and limited range of motion secondary to her work injury was slowly improving. (T. 148). Dr. Donahue classified plaintiff's pain as "persistent but low grade," and opined that she "would be able to do sedentary work." (T. 148). Dr. Donahue also noted that plaintiff had persistent tingling in her left leg and "sciatica type sensation" in both legs. (T. 148). The doctor requested an extension of disability for the plaintiff, she ordered a C.T. scan of the lumbosacral spine, and she requested continued physical therapy. (T. 148).

---

[5] A treating physician's opinion as to whether a plaintiff can return to a past job is not a medical opinion entitled to controlling weight under the treating physician's rule. *See* 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Furthermore, many opinions in the record were made for plaintiff's worker's compensation case, and must be considered in that light. For example, an opinion sent to the Worker's Compensation Board that plaintiff is "totally disabled" likely refers only to total disability from a particular job, and does not consider other work available in the national economy. Non-controlling opinions in this part of the discussion are referenced not to demonstrate plaintiff's level of disability, but rather to examine whether the ALJ's assertion that Dr. Donahue's assessments are inconsistent is supported by substantial evidence.

Two weeks after Dr. Donahue wrote to the Worker's Compensation Board, she began to receive additional medical evidence. On May 28, 1996, Peter J. Mehnert, M.D., sent Dr. Donahue a C.T. scan report revealing "extensive degenerative changes of the posterior joints at L5-S1 bilaterally." (T. 147). On June 10, 1996, one month after Dr. Donahue wrote to the Worker's Compensation Board,  orthopedic surgeon Gary Russotti, M.D., sent Dr. Donahue a report on his examination of plaintiff. (T. 141-143). Dr. Russotti's physical examination found that "plaintiff has difficulty undressing and walking into the room. She has no evidence of a paravertebral spasm about the lumbosacral spine but she has diffuse tenderness to palpatation from L4 to S1 bilaterally. She has restricted range of motion secondary to pain of 90 degrees flexion, 0 degrees of extension, 20 degrees of lateral side bending and rotation bilaterally." (T. 142). Dr. Russotti also found that plaintiff's lower extremity strength was normal, and a straight leg raising test was negative. (T. 143). Dr. Russotti's opinion was that the plaintiff "may be able to return to employment which requires sitting only with ability to change position as comfort requires throughout the day." (T. 141).

On August 13, 1996, James M. Ross, M.D., of the St. Mary's Hospital Rheumatology Unit, sent a letter to Dr. Donahue with findings similar to those of Dr. Russotti, although Dr. Ross found that plaintiff had normal heel-to-toe walking. (T. 268-270). Dr. Ross also found osteoarthritic changes in plaintiff's right third finger, and upon his review of radiographs unavailable to Dr. Russotti, he noted his suspicion of spondylolysis[6] at the right L5-S1. (T. 269). Dr. Ross opined that the plaintiff "has marked limitation in her activities and is still unable to work." (T. 269).

On October 11, 1996, seven months after Dr. Donahue's letter to the Worker's Compensation Board, she received the results of plaintiff's medical consultation at the University of Rochester Pain Treatment Center. (T. 189-193). Attending anesthesiologist Frederick Perkins, M.D., wrote "The patient's low back pains originate from several clear sources. Much of her pain symptomatology undoubtedly originates from bony pathology and degenerative joint disease. History and physical

---

[6] Spondylolysis is the degeneration or deficient development of a portion of the vertebra. *See Stedman's Medical Dictionary* 1678 (27th ed. 2000).

exam strongly implicate the right lumbar and sacral facets, the right greater trochanteric bursa, and the right sacro-iliac joint. There is also strong evidence for a radicular component to her pain mainly in the L5-S1 dermatolmal distribution." (T. 192). Dr. Perkins recommended ten medical follow-ups, six nerve blocks, nine physical therapy treatment sessions (to begin "once her pain can be better managed"), and ten behavioral medicine treatments. (T. 193).

On or about January 7, 1997, ten months after Dr. Donahue's letter to the Worker's Compensation Board, she faxed a medical report assessing plaintiff's functional capacity to attorney Mark Palmiere. (T. 177-193).[7] In support of her medical opinions, Dr. Donahue also faxed Mr. Palmiere copies of letters from other physicians, including Dr. Perkins' letter dated October 11, 1996. (T. 189). Dr. Donahue opined that plaintiff had not experienced improvement since March 1996, and that sustained work would cause her condition to deteriorate. (T. 180). Dr. Donahue's assessment indicated that plaintiff could sit between one and two hours continuously for up to six hours per day, that she could stand and walk less than 30 minutes continuously for up to two hours per day, and that she could occasionally lift and carry up to, but no more than, ten pounds. (T. 181). Dr. Donahue wrote that plaintiff could never bend or squat, could climb or reach only occasionally, and that repetitive hand or foot action would aggravate her back pain. (T. 182). This January 1997 assessment is not inconsistent with Dr. Donahue's earlier letter to the Worker's Compensation Board. In fact, Dr. Donahue's ongoing analysis of plaintiff's condition is precisely the perspective a treating physician brings to the medical evidence that "cannot be obtained from the objective medical findings alone or from reports of individual examinations. . . ." 20 C.F.R. § 404.1527(d)(2).

On January 13, 1997, University of Rochester Pain Treatment Center attending anesthesiologist Ghassan E. Kanazi, M.D., sent Dr. Donahue plaintiff's medical interim summary.

---

[7] This January 1997 medical report is not the hand-written note that ALJ Mazzarella asserts was inconsistent with Dr. Donahue's May 1996 letter to the Worker's Compensation Board. That handwritten note was written nine months later, on September 25, 1997. *See* discussion, *infra*.

(T. 206-207). The summary reports little change in plaintiff's progress, and notes that treatment changes were planned. (T. 206).

On January 20, 1997, eight months after Dr. Donahue wrote to the Worker's Compensation Board, Dr. Eugene Branovacki sent her his findings from his second examination of plaintiff. (T. 253-256). Dr. Branovacki wrote that plaintiff had difficulty walking, and posterior bending was not obtainable. (T. 255). "The straight leg raising test [was] positive on both sides at about 30 degrees." (T. 255). Dr. Branovacki described plaintiff as "temporarily, totally disabled from any kind of gainful occupation." (T. 254). He also wrote that plaintiff was "in no condition to return to work at the present time." (T. 254). On April 4, 1997, Dr. Branovacki sent Dr. Donahue the results from his third examination of plaintiff. (T. 241, 253, 265). Dr. Branovacki once again wrote that plaintiff suffered from low back pain as well as degenerative osteoarthritis of the facet joints and L5-S1 vertebrae. (T. 241). He wrote that plaintiff was in a substantial amount of pain, and that she appeared to be unhappy. (T. 241-242). Dr. Branovacki also wrote that he considered plaintiff "to be temporarily, totally disabled from any kind of gainful occupation. Her disability is causally related to the industrial injury of March 4, 1996. I do not believe that there is any type of work that she can do, and restrictions are not in order." (T. 242).

On September 25, 1997, 16 months after Dr. Donahue wrote to the Worker's Compensation Boar and one day before plaintiff appeared for the first hearing before ALJ Mazzarella, Dr. Donahue hand-wrote the following note on her stationary:

> To whom it concerns[:]
>     Mrs. Nettie Richardson is 100% disabled at this present time. I expect her disability to continue without improvement for at least 12 more months.[8] (T. 272).

ALJ Mazzarella cited this note in his December 2000 decision when he wrote, "Dr. Donahue has provided no objective medical evidence to support her statement of disability which is not

---

[8] The note is not addressed, so it is not entirely clear to whom it was sent. As stated *supra*, the note was written one day prior to plaintiff's first hearing before ALJ Mazzarella. That context suggests it was written for the Commissioner.

consistent with her prior assessment that the claimant was capable of sedentary level work." (T. 305). I disagree with the assertion that Dr. Donahue provided no objective medical evidence, and I disagree that the handwritten note is inconsistent with her prior assessment.[9]

First, the record before ALJ Mazzarella when he wrote his December 2000 decision contained a great deal of objective medical evidence from Dr. Donahue. She provided a medical assessment of plaintiff's physical ability to perform work-related activities in January of 1997 and in April of 2000. (T. 593-606). She also provided her office notes spanning between December of 1994 and July of 2000, including an update sent no later than October 5, 2000. (T. 150, 153, 155, 156, 166, 169-172, 613, 615-617, 623, 637-638). The record also contained a great deal of objective medical evidence that was sent to Dr. Donahue during the 16 months before she wrote the September 1997 note. As detailed above, reports from Drs. Mehnert, Russotti, Ross, Perkins, Kanazi, and Branovacki were all sent to Dr. Donahue and subsequently entered into evidence. The ALJ's statement that "Dr. Donahue has provided no objective medical evidence to support her statement of disability," is a gross mischaracterization of the contents of the record. The ALJ's mischaracterization is indicative that his analysis is not based upon substantial evidence.

Second, a treating physician's change of opinion over time concerning the assessment of a patient's condition does not necessarily establish a fatal inconsistency. *See Harris v. Railroad Retirement Bd.*, 948 F.2d 123, 127 (2d Cir.1991) (where the treating physician first indicated on a form that standing, walking, and sitting were not affected by claimant's impairments, and three

---

[9] As discussed *infra*, neither Dr. Donahue's May 1996 statement to the Worker's Compensation Board that plaintiff could do sedentary work, nor her September 1997 handwritten note are considered "medical opinions" under the treating physician's rule. They are not entitled to controlling weight because they represent opinions on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled."). "The ALJ was not required to accord [these statements] any significant weight under the treating physician's rule. Nor was the ALJ required to state reasons on the record for not doing so." *Earl-Buck v. BARNHART,* 414 F.Supp.2d 288, 293 (W.D.N.Y.2006). It is unclear why the ALJ selectively focused on treating physician statements which are neither inconsistent nor entitled to controlling weight, especially when the record contains other medical opinions from the same treating physician which *are* entitled to controlling weight. This was error.

months later indicated on a form that claimant could only sit for two hours, stand for one hour, and not walk at all during an eight-hour workday, the "inconsistency [between the two] forms [was] not so substantial as to constitute sufficient grounds for totally discounting the treating physician's diagnosis"). This is particularly true where, as here, the record shows that: (1) the physician acquired *additional* medical evidence during the time period between her initial assessment and later statement; and (2) her later statement is not truly contradictory with the prior assessment.

### 2. Dr. Donahue's assessments were consistent with the record as a whole

The ALJ's decision to deny Dr. Donahue's opinion regarding plaintiff's functional abilities controlling weight was also based on the assertion that the limitations indicated by Dr. Donahue were inconsistent with the findings of the examining physicians. (T. 305). The ALJ specifically pointed to Dr. Donahue's assertion that repetitive hand motions would aggravate plaintiff's back pain, and also to the doctor's diagnosis of plaintiff's depression. (T. 305).

In his decision, the ALJ wrote, "Dr. Donahue indicated that repetitive action with the plaintiff's hands would aggravate her back pain. There does not appear to be any basis for this conclusion even within the realm of claimant's subjective complaints." (T. 305). This is not an accurate representation of the record, nor is it a "good reason" to deny Dr. Donahue's opinion controlling weight.

The Second Circuit "has refused to uphold an ALJ's decision to reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings." *Rosa*, 168 F.3d at 81; *see also Shaw*, 221 F.3d at 134-135 ("explaining that while a physician's opinion might contain inconsistencies and be subject to attack, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion'" (quoting *Wagner v. Secretary of Health & Human Servs.*, 906 F.2d 856, 862 (2d Cir.1990))). Here, the ALJ's criticism is not warranted because it was not based on a thorough consideration of all the evidence.

On August 13, 1996, Dr. James M. Ross, M.D., of St. Mary's Hospital Rheumatology Unit, reported that plaintiff "had occasional pain in her right third finger for many years," and during a physical examination he found that plaintiff "had osteoarthritic changes in the right third finger . . . ." (T. 268, 269). The Court does not know whether Dr. Ross' report was the basis for Dr. Donahue's conclusion that repetitive hand motion would aggravate plaintiff's back pain. Similarly, the ALJ could not know the basis of Dr. Donahue's conclusion. By ignoring Dr. Ross' report however, the ALJ ignored a seemingly obvious potential basis for the conclusion and substituted his own opinion for that of a physician. That was error. "The ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (citing *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)).

It was also error to deny plaintiff benefits without fully developing the record on an issue that the ALJ considered as part of his finding of no disability. Specifically, the issue of whether repetitive hand motion would aggravate plaintiff's back pain. ALJ Mazzarella's decision asserts that Dr. Donahue "failed on two occasions to clarify her assessment of the plaintiff's functional capabilities."[10] (T. 307). Still, the ALJ never raised this issue at either of plaintiff's hearings. Dr. Donahue first linked plaintiff's repetitive hand motion to back pain in a January 7, 1997 medical report, more than nine months before the first administrative hearing. She reported her opinion again on an April 25, 2000 medical assessment form, more than five months before the second hearing. (T. 593-599). Despite the ALJ's belief that this perceived inconsistency within the record constituted substantial evidence sufficient to override the weight of a treating physician's diagnosis, he did not

---

[10] Considering that Dr. Donahue did ultimately respond to requests for information by returning a residual functional capacity report along with lab reports and notes from a physical exam, it is not at all clear that Dr. Donahue actually failed to make the clarifications requested by the ALJ. (T. 592-599).

ask the plaintiff during either of the administrative hearings if, in fact, repetitive hand motions aggravated her back pain. (T. 25-66, 312-342).

An ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record. *See Schaal*, 134 F.3d at 505 ("Even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*."). The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or . . . by a paralegal." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty . . . exists even when . . . the claimant is represented by counsel." (quoting *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982))).

The ALJ's decision also referred to Dr. Donahue's diagnosis of plaintiff's depression, implying that it was inconsistent with the record as a whole. (T. 305). I disagree. In his decision, the ALJ first contrasts Dr. Donahue's diagnosis with test results from an October 1996 psychological examination performed by clinical psychologist Anthony S. Papciak, Ph.D. (T. 305). Dr. Papciak's test findings revealed no evidence of severe psychopathology, depression, anxiety, or irritability. (T. 187). Second, the decision noted that plaintiff "has not been referred for any type of psychiatric care." (T. 305). The ALJ concluded "that the claimant did not have remarkable evidence of any psychiatric mental impairment." (T. 305). To the extent that this finding was used to demonstrate an inconsistency between Dr. Donahue's diagnosis and the record as a whole, the ALJ's conclusion is not based upon substantial evidence and is error.

Dr. Donahue's diagnosis of plaintiff's depression was not inconsistent with Dr. Papciak's findings or the record as a whole. Plaintiff may or may not have suffered from *severe* depression, but

- 15 -

reports from multiple doctors expressed concern over her depressed mood and mental state.[11] Dr. Donahue's assessment of plaintiff's depression was well-supported by objective medical evidence and is consistent with the record as a whole. The ALJ's reliance upon Dr. Donahue's diagnosis of depression to demonstrate an inconsistency between her assessment and the record as a whole is not based upon substantial evidence.[12]

The Commissioner relies on a report from orthopedic surgeon Gerald A. Coniglio, M.D., dated June 12, 1997, that differs from Dr. Donahue's opinions. (T. 273-277). Dr. Coniglio opined that plaintiff was not disabled due to physiological alterations of her lumbar spine, and no longer required consistent pain clinic treatments; he also wrote that weekly physical therapy may continue. (T. 274). The findings from Dr. Coniglio's single examination are inconsistent with the findings of other examining physicians including Dr. Branovacki, the orthopedic surgeon who examined

---

[11] For example, on the very same day plaintiff met Dr. Papciak, Dr. Perkins also examined plaintiff and noted that she "started on Zoloft five days ago for depression." (T. 190). Dr. Perkins also noted that plaintiff "became quite tearful several times during the exam," and that "she is increasingly irritable at home and does become sad." (T. 191). Depression was also noted in a December 2, 1996 follow-up by the University of Rochester Pain Treatment Center. (T. 200). When plaintiff met with Dr. Papciak again on February 28, 1997, the doctor reported that she "appeared depressed and was tearful during the session." (T. 211). On April 4, 1997, Dr. Branovacki reported that plaintiff appeared to be unhappy. (T. 242). On May 6, 1997, Ghassan E. Kanazi, M.D., wrote in a medical interim summary that "we are quite concerned about [plaintiff's] continued degree of tearfulness and depression related to her pain problem." (T. 219). Additional evidence in the form of letters from examining physicians and Dr. Donahue's own notes refers regularly to plaintiff's crying, unhappiness, depression, and pharmaceutical treatment to alleviate depression. (T. 216, 217, 225, 589, 616, 637). Even the ALJ's own findings include a statement that plaintiff has a history of depression. (T. 308).

[12] Moreover, ALJ Mazzarella's assertion that plaintiff was not referred for any type of psychiatric care mischaracterizes the record. On October 11, 1996, clinical psychologist Anthony S. Papciak, Ph.D., recommended 12 individual sessions of behavioral medicine therapy, "that would provide instruction in cognitive and behavioral stress management and in relaxation training . . . ." (T. 187). On May 6, 1997, Dr. Kanazi from the University of Rochester Pain Treatment Center wrote, "We think it would be very helpful at this point in time to have a psychiatric referral for the medical management of depression related to [plaintiff's] pain problem." (T. 219). Furthermore, as noted at the first administrative hearing and throughout the record, plaintiff was prescribed medication for depression. (T. 55, 121, 123, 180, 211, 464, 489). Although the record is devoid of follow-up on Dr. Kanazi's recommended referral for psychiatric treatment, it mischaracterizes the record to suggest that plaintiff's doctors did not think treatment was needed.

plaintiff on three occasions between October 1996 and April 1997. (T. 241, 253, 265). Furthermore, Dr. Coniglio's twice-stated erroneous belief that Dr. Donahue was plaintiff's "psychiatrist" rather than her primary care physician certainly suggests a lack of understanding regarding plaintiff's course of treatment and underlying condition. For these reasons, I do not consider Dr. Coniglio's report to constitute reliable evidence sufficient to overcome Dr. Donahue's opinions as treating physician.

### 3. Dr. Donahue's opinion is entitled to controlling weight

ALJ Mazzarella's decision did not give good reasons, supported by substantial evidence, for failing to assign controlling weight to the opinion of a treating source. The ALJ failed to follow the treating physician rule by ignoring substantial evidence of record and by committing legal error in his analysis of Dr. Donahue's opinions. Even if the ALJ had properly discounted Dr. Donahue's medical opinion, he would have still failed to properly explain the weight he gave to other physician opinions in the record.

The ALJ denied additional weight to any of the plaintiff's examining physicians, and he did so with almost no explanation. (T. 307). His decision referred to the plaintiff's subjective allegations and associated functional limitations as "suspect," but inexplicably assigned those allegations more weight than the opinions of the Commissioner's own medical consultants. (T. 307).

ALJ Mazzarella's failure to explain the weight he gave to other physician opinions in the record was also legal error. 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."). Furthermore, where the ALJ did explain why he discounted the testimony of examining physicians, his analysis was not based on all the evidence in the record. For example, where the ALJ discounted the opinion of an orthopedic surgeon who examined plaintiff on three separate occasions, he wrote "It appears that the

subsequent opinions of a temporary, total disability by another examining physician relied almost exclusively on the claimant's self-reported subjective complaints." (T. 304). That assertion ignores the surgeon's notations regarding his physical examinations of plaintiff, and it also ignores his review of plaintiff's C.T. scans. (T. 241, 253, 255-256, 265). The Commissioner had numerous opportunities to properly apply the treating physician rule, and yet failed to do so. The decision of the ALJ must be reversed and remanded to the Commissioner for a second time. On remand, Dr. Donahue's medical opinions should be given controlling weight.

## B. Opinions of Examining Physicians

The ALJ denied additional weight to any of the plaintiff's examining physicians, and he did so with almost no explanation. (T. 307). His decision referred to the plaintiff's subjective allegations and associated functional limitations as "suspect," but inexplicably assigned those allegations more weight than the opinions of the Commissioner's medical consultants. (T. 307). ALJ Mazzarella's failure to explain the weight he gave to other physician opinions in the record was legal error. 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

Moreover, where the ALJ did explain why he discounted the testimony of examining physicians, his analysis was not based on all the evidence in the record. For example, where the ALJ discounted the opinion of Dr. Branovacki, an orthopedic surgeon who examined plaintiff on three separate occasions, he wrote, "It appears that the subsequent opinions of a temporary, total disability by another examining physician relied almost exclusively on the claimant's self-reported subjective complaints." (T. 304). That assertion ignores the surgeon's notations regarding his physical examinations of plaintiff, and it also ignores his review of plaintiff's C.T. scans. (T. 241, 253, 255-256, 265).

## V. Reversal and Remand for Further Administrative Proceedings

On remand, Dr. Donahue's medical opinions should be given controlling weight. In January of 1997 and December of 2000, Dr. Donahue opined that plaintiff could occasionally lift and carry up to, but never more than, ten pounds. (T. 181, 593). Dr. Donahue also opined that plaintiff could sit up to four hours per day, but for no longer than one hour at a time, and that plaintiff could stand and walk up to two hours each per day, but at an interval of less than 30 minutes at a time. (T. 181, 594). Dr. Donahue further opined that plaintiff could not stoop, crouch, kneel, crawl, bend, squat, push, or pull. (T. 182, 594-595). Dr. Donahue's opinions also limit plaintiff from performing repetitive actions with her hands and feet, most notably, her right hand. (T. 182, 594). The record also contains medical opinions from Dr. Donahue regarding her diagnosis of plaintiff's depression, Meneire's disease, sciatica, chronic colitis, vertigo, and Crohn's disease. ALJ Mazzarella determined that plaintiff's past relevant work a security guard and assembly worker had exertional demands consistent with light work.[13] (T. 308). According the proper weight to Dr. Donahue's opinion means that plaintiff likely could not return to her past relevant work.

Because the ALJ found that plaintiff was not disabled at step four, he made no findings at step five regarding whether plaintiff could perform other work that exists in the national economy. "'[W]here there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" a remand to the Commissioner for further development of the evidence and proper application of the correct legal standards is required. *See Pratts*, 94 F.3d at 39 (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)); *see also Rosa*, 168 F.3d at 83. A remand for further proceedings is particularly appropriate where, as here, the ALJ did not complete all five steps of the

---

[13] "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

disability evaluation. *See Pronti v. Barnhart*, 339 F.Supp.2d 480, 489 (W.D.N.Y.2004). I therefore conclude that remand for further proceedings is the proper remedy here.

On remand, the Commissioner should accord Dr. Donahue's opinions controlling weight and reevaluate step four of the sequential evaluation process. *See supra* note 3. If the Commissioner finds that plaintiff lacks the residual functional capacity to return to her past relevant work, then a determination must be made at step five. A step-five determination should include evidence from a vocational expert, and should consider both exertional and non-exertional limitations[14] unless, of course, this is not necessary because plaintiff is found to be disabled under the Commissioner's Medical-Vocational Guidelines. *See generally* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt.# 7) is denied. The case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Decision and Order.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
     July 6, 2006.

---

[14] In this case, Dr. Donahue opined that plaintiff has both exertional and non-exertional limitations. "[S]ole reliance on the grid[s] may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform." In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603.